**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **DARRYL TAYLOR and** ) | |
| **SUSAN TAYLOR,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 18-2053-KHV** |
| **HYRUM PRINCE, et al.,** ) | |
| ) | |
| **Defendants.** ) | |
| _____) | |

**MEMORANDUM AND ORDER**

On December 21, 2017, Darryl Taylor and Susan Taylor filed suit against Hyrum Prince, Amy Prince and Virginia Van Valkenburg. Notice Of Removal (Doc. #1) filed January 31, 2018, ¶ 1. Plaintiffs seek damages from Hyrum Prince and Amy Prince ("the Princes"), who allegedly misrepresented the condition of a home which they sold to plaintiffs, and Van Valkenburg, who allegedly failed to discover defects while inspecting the home. Petition For Damages (Doc. #1-1), ¶¶ 9-14. This matter comes before the Court on Defendant Virginia Van Valkenburg's Motion To Dismiss Or Compel Mediation (Doc. #5) filed February 6, 2018. For reasons stated below, the Court sustains defendant's motion.[1]

**Legal Standard**

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an

---

[1] Plaintiffs requested oral argument on this motion. Plaintiffs' Memorandum In Opposition To Defendant Virginia Van Valkenburg's Motion To Dismiss Or Compel Mediation (Doc. #7) filed February 27, 2018 at 6. Oral argument would not have materially assisted the disposition of the instant motion. Thus, plaintiffs' request is overruled.

entitlement of relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – not merely conceivable – on its face. Id. at 679-80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679. The Court need not accept as true those allegations which state only legal conclusions. See id.

Plaintiffs bear the burden of framing their claim with enough factual matter to suggest that they are entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. See Twombly, 550 U.S. at 556. Plaintiffs make a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. Plaintiffs must show more than a sheer possibility that defendant has acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendant's liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Iqbal, 556 U.S. at 678. Similarly, where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the pleading has alleged – but has not "shown" – that the pleader is entitled to relief. Id. at 679.

The Court does not analyze potential evidence that the parties might produce or resolve factual disputes when ruling on a Rule 12(b)(6) motion. Jacobsen v. Deseret Book Co., 287 F.3d 936, 941 (10th Cir. 2002). The Court accepts well-pleaded allegations as true and views them in the light most favorable to the non-moving party. Sutton v. Utah State Sch. for Deaf & Blind, 173 F.3d

1226, 1236 (10th Cir. 1999). In addition to the complaint, the Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." Alvarado v. KOB-TV, LLC, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting Jacobsen, 297 F.3d at 941).

**Factual And Procedural Background**

Briefly summarized, plaintiffs allege as follows:

In 2015, plaintiffs entered into a contract with the Princes to purchase property in Overland Park, Kansas. Petition For Damages (Doc. #1-1), ¶¶ 9-10. Among other things, the Princes represented to plaintiffs that (1) the crawl space had no deterioration problems; (2) the property did not have water leakage, wood rot or plumbing issues; (3) they had not attempted to repair any defects, and all material alterations to the property had been completed in compliance with relevant codes; (4) they did not know of any mold on the property; and (5) they had disclosed all material information about the property. Id., ¶ 11.

Before closing on the property, plaintiffs hired Van Valkenburg to inspect the home. Id., ¶¶ 3, 12. The inspection noted several problems but failed to disclose issues concerning the crawl space, plumbing, floor joists and mold. Id., ¶¶ 13-15. In July of 2015, plaintiffs completed their purchase of the property. Id., ¶ 15.

Approximately six months later, a dishwasher fell through the kitchen floor of the home. Id., ¶ 17. In the following months, repair efforts revealed that the property had leaks and significant mold growth. Id., ¶¶ 18-19. Plaintiffs also discovered signs that the Princes had attempted to conceal defects and had made repairs which did not comply with housing codes. Id., ¶¶ 19-21.

On December 21, 2017, plaintiffs filed suit in the District Court of Jackson County, Kansas.

Notice Of Removal (Doc. #1), ¶ 1. Plaintiffs seek damages from the Princes and Van Valkenburg under multiple common law causes of action and the Kansas Consumer Protection Act, K.S.A. § 50-623 et seq. See generally Petition For Damages (Doc. #1-1). On January 31, 2018, Van Valkenburg removed the action to this Court. Notice Of Removal (Doc. #1).

On February 6, 2018, Van Valkenburg filed the pending motion to dismiss or compel mediation.[2] Defendant seeks dismissal of all claims against her: (1) breach of contract (Count 6), (2) negligence (Count 7) and (3) negligent misrepresentation (Count 8).[3] See Motion To Dismiss Or Compel Mediation (Doc. #5) at 3-6. Defendant's motion largely relies on the inspection contract – the Pre-Inspection Agreement And Notice Of Inspection (the "Agreement") – which outlines the services which she agreed to provide plaintiffs. Id. at 2; see Doc. #5-1. Defendant attached the Agreement as an exhibit to her motion.[4] In relevant part, it provides as follows:

> Client: Sue Taylor
> * * *
> Date: June 23, 2015
>
> The purpose of this inspection is to provide the client with information about the condition of the house at the time of the inspection. It will be a visual, nondestructive examination of the major components of the home and will be conducted in accordance with the Standards of Practice and Code of Ethics of the

---

[2] The Princes did not join Van Valkenburg in moving to dismiss. For ease of reference, the rest of this order refers to Van Valkenburg as "defendant."

[3] Plaintiffs allege separate negligent misrepresentation claims against the Princes and Van Valkenburg but identify both claims as Count 5. See Petition For Damages (Doc. #1-1) at 9-10, 12. In light of this presumed typographical error, the Court refers to the negligent misrepresentation claim against Van Valkenburg as Count 8.

[4] The complaint refers to the Agreement, and the parties do not dispute its authenticity. See Petition For Damages (Doc. #1-1), ¶ 57 ("Defendant Van Valkenburg by virtue of the employment contract was obligated to perform a proper Property inspection") (emphasis added). Thus, the Court may consider the contract while deciding defendant's motion. Alvarado, 493 F.3d at 1215.

> American Society of Home Inspectors (ASHI) and the Kansas Home Inspector Standard of Practice. (A copy of these Standards is available upon request.)
>
> The inspector will provide a written report that is the sole property of the client. Copies of the report or summary will be provided to the other parties involved with the client's permission to disclose such information.
> \* \* \*
> The following systems will be examined and described: Roof, attic, walls, floors, doors, windows, stairs, fireplaces (partial), foundation, grading, exterior, electric, plumbing, heat and central air conditioning.
> \* \* \*
> To the extent allowed by law, the maximum liability of Van Valkenburg Home Inspections is limited to the inspection fee.
>
> If there are any concerns in the future regarding the results of the inspection, the client should call the inspector who will answer questions and who reserves the right to re-inspect the property before repairs are made.  Van Valkenburg Home Inspection will not pay for repairs made unless we have the opportunity to re-examine the item before it is repaired, except in the case of emergency repair.
>
> Complaints must be filed within one year of the inspection.
>
> If there are disputes related to the inspection, the client agrees to participate in mediation to resolve the issue.  A mediator will be mutually-chosen who is familiar with local civil laws and the Standards of Practice of the American Society of Home Inspectors.  If this mediation doesn't resolve the conflict then the inspection report shall be submitted for final and binding arbitration under Rules and Procedures of the Expedited Arbitration of Home Inspection Disputes of Construction Arbitration Services, Inc.  Both parties agree to the final judgment.  Legal expenses will be paid by the client if the case is settled without fault to the inspector.
> \* \* \*
> **I have read and understand the above terms.  I give permission for verbal and written information regarding the results of this inspection to be shared with the parties involved.**

Doc. #5-1 at 1-2 (emphasis in original).  Notably, only Susan Taylor and defendant signed the

Agreement.  Id. at 2.

## **Analysis**

Defendant seeks dismissal on three grounds.  First, she contends that the Agreement

shortened the applicable statute of limitations to one year from the date of inspection and thus,

plaintiffs failed to timely file their claims. Id. at 4-5. Second, defendant asserts that Darryl Taylor lacks standing in light of plaintiffs' statement that he is not bound by the Agreement because he did not sign it. Defendant Virginia Van Valkenburg's Reply In Support Of Her Motion To Dismiss Or Compel Mediation (Doc. #8) filed March 12, 2018 at 1-4; see Plaintiffs' Memorandum In Opposition (Doc. #7) at 2. Third, defendant asserts that the Agreement requires that the parties mediate any disputes related to the inspection. Id.

**I.    Time Barred Pursuant To The Agreement**

Defendant asserts that the Agreement shortened Kansas's five-year statute of limitations for contract-based claims to one year. Motion To Dismiss Or Compel Mediation (Doc. #5) at 4-5; see K.S.A. § 60-511 (five years for actions on "agreement, contract, or promise in writing"). Defendant relies the following one-sentence paragraph in the Agreement: "Complaints must be filed within one year of the inspection." Doc. #5-1 at 2. She asserts that this provision bars all claims because plaintiffs filed suit approximately two and a half years after the inspection – on December 21, 2017. Motion To Dismiss Or Compel Mediation (Doc. #5), ¶ 7. In response, among other things, plaintiffs assert that the relevant provision "fail[s] to give an ordinary person . . . fair notice that they are surrendering valuable legal remedies and rights" – i.e. the Agreement is ambiguous. Plaintiffs' Memorandum In Opposition (Doc. #7) at 5.

Whether a written contract is ambiguous is a matter of law for the Court. Simon v. Nat'l Farmers Org., 250 Kan. 676, 680, 829 P.2d 884, 888 (1992). To be ambiguous, a contract must contain "provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language." Id. In other words, "the application of pertinent rules of interpretation to the face of the instrument [must] leave[] it genuinely uncertain which one of two

or more meanings is the proper meaning." Clark v. Prudential Ins. Co. of Am., 204 Kan. 487, 491, 464 P.2d 253, 256 (1970) (citations omitted). "In construing a contract, the intent of the parties is the primary question; meaning should be ascertained by examining the documents from all corners and by considering all of the pertinent provisions, rather than by critical analysis of a single or isolated provision; and reasonable rather than unreasonable interpretations are favored." Akandas, Inc. v. Klippel, 250 Kan. 458, Syl. ¶ 1, 827 P.2d 37, 39-40 (1992).

The effect of the provision in question turns on the parties' intended meaning of "complaint." In colloquial use, a complaint refers to an "act or action of expressing protest, censure or resentment" or "an expression of injustice." Webster's Third New International Dictionary 464 (1986). Under this construction, the one-year restriction would likely refer to the Agreement's informal complaint procedure, wherein defendant suggests that she may pay for repairs if the client reports post-inspection "concerns" in a proper fashion. Doc. #5-1 at 2. In some legal contexts, on the other hand, a complaint means an "initial pleading that starts a civil action." Complaint, Black's Law Dictionary (10th ed. 2014). But see K.S.A. §§ 60-203, 60-207 (civil action commenced by filing "petition"). If used in this sense, the provision could arguably shorten the generally applicable statute of limitations. Because both interpretations appear reasonable, the presumption of "reasonable rather than unreasonable interpretations" does not resolve the imprecise language of the Agreement. Akandas, 250 Kan. at 465, 827 P.2d at 44.

Further, viewing the disputed provision in the context of the contract as a whole does not clarify the parties' intended definition of complaint. Id. at Syl. ¶ 1, at 39-40; Arnold v. S.J.L. of Kan. Corp., 249 Kan. 746, 749, 822 P.2d 64, 67 (1991). The Agreement does not define complaint or use the term in other provisions. Discussion of the informal complaint procedure in the preceding

paragraph refers to "concerns." See Doc. #5-1 at 2. In the paragraph immediately following the disputed provision, the Agreement provides that the parties must mediate and then arbitrate "disputes" related to the inspection. Id.

After reviewing the Agreement as a whole and the complaint, the Court remains uncertain of the meaning of the disputed provision. In light of this ambiguity, the Court cannot resolve the question of fact concerning the parties' intent. Integrated Living Cmtys, Inc. v. Homestead Co., LC, 106 F. Supp. 2d 1141, 1143 (D. Kan. 2000) (if contract ambiguous, question of fact concerning parties' intent); Jacobsen, 287 F.3d at 941. Thus, the Court overrules defendant's motion on this ground.

## II. Darryl Taylor's Standing

In response to defendant's argument that plaintiffs' claims are time-barred, plaintiffs assert that "Darryl Taylor is not bound by the Agreement" because he did not sign it. Plaintiffs' Memorandum In Opposition (Doc. #7) at 5; see Doc. #5-1 at 2 (only Susan Taylor's signature). In reply, defendant asserts that the Court should dismiss Darryl Taylor's claims for lack of standing. Virginia Van Valkenburg's Reply (Doc. #8) at 2.[5]

### A. Breach Of Contract (Count 6)

In Kansas, a person who is not a party to a contract lacks standing to sue for its breach, unless the person has a special status with respect to the contract such as that of a third-party

---

[5] Defendant raises this argument for the first time in her reply. However, because it "merely responds to matters placed in issue by the response," it is properly asserted. See Vonlintel v. Eagle Comms., Inc, No. 14-4125-KHV, 2015 WL 5093271, at 1 (D. Kan. Aug. 28, 2015). Further, plaintiffs did not seek leave to file a surreply which is the proper course of action for responding to arguments raised in a reply brief. Pippin v. Burlington Res. Oil & Gas Co., 440 F.3d 1186, 1192 (10th Cir. 2006) (court cannot forbid response to new arguments in reply); see Sheldon v. Khanal, No. 07-2112-KHV, 2008 WL 474262, at *4 n.4 (D. Kan. Feb. 19, 2008).

beneficiary, corporate successor or assignee of a contracting party.  Bevill Co. v. Sprint/United Mgmt. Co., 77 F. App'x 461, 462 (10th Cir. 2003); see Kansas ex rel. Stovall v. Reliance Ins. Co., 278 Kan. 777, 793, 107 P.3d 1219, 1230-31 (2005).  As to Count 6, defendant asserts that Darryl Taylor lacks standing to pursue a breach of contract claim because he was not a party to the Agreement.  Virginia Van Valkenburg's Reply (Doc. #8) at 2.

Plaintiffs admit that Darryl Taylor was not a party to the Agreement and do not allege that he acquired third-party beneficiary status.  Plaintiffs' Memorandum In Opposition (Doc. #7) at 5; see Petition For Damages (Doc. #1-1), ¶ 57 (defendant obligated to perform proper inspection "by virtue of employment contract").  Further, the Agreement identifies Susan Taylor as the client and provides that its "purpose . . . is to provide the client with information" and the written inspection report "is the sole property of the client."  Doc. #5-1 at 1.  While the Agreement also states that information may be shared with third parties, the complaint does not allege that defendant intended to benefit Darryl Taylor in any way.  Because Darryl Taylor does not allege that he was a party to the Agreement or had any special status with respect to it, he does not have standing to pursue a breach of contract claim.  Thus, the Court sustains defendant's motion to dismiss Darryl Taylor's breach of contract claim, Count 6, on this ground.

B. Negligence (Count 7)

To prove negligence, plaintiffs must establish that (1) defendant owed them a duty; (2) defendant breached that duty; (3) the breach caused plaintiffs' injury; and (4) plaintiffs sustained damages.  Adams v. Bd. of Sedgwick Cty. Comm'rs., 289 Kan. 577, 585-86, 214 P.3d 1173, 1179 (2009).  In Kansas, a party can maintain a negligence claim related to a contract by alleging that defendant breached "a duty imposed by law, a wrong independent of contract."  Malone v. Univ.

of Kan. Med. Ctr., 220 Kan. 371, 374, 552 P.2d 885, 888 (1976).

Defendant asserts that in light of his admission that he is not bound by the Agreement, Darryl Taylor does not sufficiently allege that she "owed him any legal duty in connection with the home inspection." Virginia Van Valkenburg's Reply (Doc. #8) at 3.[6] Darryl Taylor alleges that defendant owed him a duty because he was a "purchaser[] of the [p]roperty." Petition For Damages (Doc. #1-1), ¶ 57.

This vague allegation likely refers to the common law duty of a service provider to perform "in a workmanlike manner and to exercise reasonable care in doing [] work." David v. Hett, 293 Kan. 679, 697, 270 P.3d 1102, 1113 (2011) (quoting Gilley v. Farmer, 207 Kan. 536, 542, 485 P.2d 1284, 1289 (1971)). This legal duty however, only extends to parties to a contract. See Coker v. Siler, 48 Kan. App. 2d 910, 918, 304 P.3d 689, 695 (2013) (implied warranty of workmanlike performance "exist[s] only when the parties have negotiated an underlying agreement for consideration") (emphasis added); Corral v. Rollins Protective Servs. Co., 240 Kan. 678, Syl. ¶ 6, 732 P.2d 1260, 1261 (1987) (while not arising from contracts, implied warranties protect parties to agreement). Unlike Susan Taylor, Darryl Taylor is not a party to the Agreement. Accordingly, plaintiff does not allege that defendant owed him a common law duty to perform her work in a workmanlike fashion. Darryl Taylor does not allege any alternative duty that defendant owed him. Thus, the Court sustains defendant's motion to dismiss Darryl Taylor's negligence claim, Count 7,

---

[6] Defendant asserts that Darryl Taylor lacks standing, or the "right to make a legal claim," but she argues that he fails to properly allege negligence and negligent misrepresentation claims. Virginia Van Valkenburg's Reply (Doc. #8) at 3; Kansas Nat'l Educ. Ass'n v. State, 305 Kan. 739, 746, 387 P.3d 795, 801 (2017) (quoting Gannon v. State, 298 Kan. 1107, 1121, 319 P.3d 1196, 1209 (2014)). Accordingly, the Court analyzes whether Darryl Taylor sufficiently alleges these claims – an inquiry distinct from whether he maintains standing to sue.

on this ground.

### C. Negligent Misrepresentation (Count 8)

To state a claim for negligent misrepresentation, plaintiffs must allege that (1) defendant failed to exercise reasonable care in obtaining or communicating false information; (2) plaintiffs relied on the information that defendant supplied for their benefit and guidance; and (3) plaintiffs suffered damages in a transaction that defendant intended to influence. Stechschulte v. Jennings, 297 Kan. 2, 22, 298 P.3d 1083, 1098 (2013).

Defendant asserts that Darryl Taylor has not alleged the second element. Plaintiffs allege that they "were two of the people for whose benefit and guidance the information was supplied or the [sic] two of the persons that the Princes knew the information would be communicated to by their agent." Petition For Damages (Doc. #1-1), ¶ 71 (emphasis added).

This allegation falls short. First, plaintiffs allege that co-defendants (the Princes), not Van Valkenburg, meet the second element of negligent misrepresentation – i.e. the Princes knew that plaintiffs would benefit or use the information provided. Id. Second, notwithstanding this presumed typographical error, the Agreement contradicts plaintiffs' allegation that Van Valkenburg intended to provide information to benefit Darryl Taylor. The Agreement provides that its "purpose . . . is to provide the client with information" and that the written inspection report "is the sole property of the client." Doc. #5-1 at 1. As noted, it identifies Susan – not Darryl – Taylor as the client. Id. While the Agreement also states that "[c]opies of the report or summary will be provided to other parties involved," plaintiffs do not allege specific facts which show that defendant knew of Darryl Taylor or his involvement in the real estate transaction. With respect to Darryl Taylor, the current allegations constitute a formulaic recitation of the elements of negligent misrepresentation.

The complaint lacks necessary factual enhancement. See Iqbal, 556 U.S. at 678. Accordingly, the Court sustains defendant's motion to dismiss Darryl Taylor's negligent misrepresentation claim, Count 8, on this ground.

## III.    Compel Mediation

With respect to the claims of Susan Taylor, defendant asserts that the Court should enforce the Agreement's mandatory mediation provision. Motion To Dismiss Or Compel Mediation (Doc. #5) at 5. Susan Taylor agrees to mediate but contends that "it would be most beneficial after the parties' initial disclosures." Plaintiffs' Memorandum In Opposition (Doc. #7) at 5.

In Kansas, the "freedom to contract is not to be interfered with lightly." Idbeis v. Wichita Surgical Specialists, P.A., 279 Kan. 755, 770, 112 P.3d 81, 91 (2005) (quoting Weber v. Tillman, 259 Kan. 457, 474, 913 P.2d 84, 96 (1996)).[7] Thus, when contracts include mandatory alternative dispute resolution procedures, courts shall enforce such provisions as written. See R&F, LLC, 2008 WL 294517, at *2 (court has authority to enforce mandatory mediation clause). Kansas courts generally presume that "mediation clauses . . . require a plaintiff to pursue mediation before filing a claim, even in the absence of explicit language requiring that mediation precede litigation." Vanum Constr. Co. v. Magnum Block, LLC, 45 Kan. App. 2d 54, 62, 245 P.3d 1069, 1075 (2010) (citing Santana v. Olguin, 41 Kan. App. 2d 1086, 1092-94, 208 P.3d 328, 333 (2009); Crandall v. Grbic, 36 Kan. App. 2d 179, 197, 138 P.3d 365, 379 (2006)).

---

[7]    Because defendant's motion seeks to compel mediation, the Court does not analyze the Agreement under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. Salt Lake Tribune Publ'g Co., LLC v. Mgmt. Planning, Inc., 390 F.3d 684, 689 (10th Cir. 2004) (process must resemble classic arbitration to be considered under FAA); see Doc. #5-1 at 2 (must mediate claims before arbitration); see also R&F, LLC v. Brooke Corp., No. 07-2175-JWL, 2008 WL 294517, at *2 (D. Kan. Jan. 31, 2008) (premature to decide whether parties must arbitrate claims when contract requires arbitration of issues not resolved through mediation).

The Agreement provides that "the client agrees to participate in mediation to resolve [] issue[s related to the inspection]." Doc. #5-1 at 2. Plaintiffs fail to cite any authority or provide any argument in support of their proposal to postpone enforcement of the mandatory mediation provision until after the parties' initial disclosures. Plaintiffs' Memorandum In Opposition (Doc. #7) at 5. In fact, the presumption that mediation precede litigation weighs against such delay. Vanum Const. Co., 45 Kan. App. 2d at 62, 245 P.3d at 1075. Thus, the Court compels the parties to mediate the claims of Susan Taylor pursuant to the terms of the Agreement.

When enforcing a mandatory alternative dispute resolution provision, the Court retains discretion to dismiss or to stay the action. Pulse Sys., Inc. v. SleepMed Inc., No. 15-cv-1392-JTM, 2016 WL 738201, at *4 (D. Kan. Feb. 23, 2016). In conjunction with her motion to compel mediation, defendant does not specify whether she seeks to dismiss or stay this action. Because plaintiffs assert claims against co-defendants which remain pending, the Court compels mediation and stays Susan Taylor's claims against this defendant.

**IT IS THEREFORE ORDERED** that Defendant Virginia Van Valkenburg's Motion To Dismiss Or Compel Mediation (Doc. #5) filed February 6, 2018 is **SUSTAINED**. The Court dismisses Darryl Taylor's claims against Virginia Van Valkenburg (Counts 6, 7 and 8). The Court stays Susan Taylor's claims against Virginia Van Valkenburg (Counts 6, 7 and 8).

**IT IS FURTHER ORDERED** that Susan Taylor and Virginia Van Valkenburg comply with the mandatory mediation provision of the Pre-Inspection Agreement And Notice Of Inspection (Doc. #5-1) filed February 6, 2018.

Dated this 6th day of June, 2018 at Kansas City, Kansas.

                                                        s/ Kathryn H. Vratil
                                                        Kathryn H. Vratil
                                                        United States District Judge